THE FAIRMOUNT HOSPITAL, INC., A CORPORATION OF NEW JERSEY, PROSECUTOR, v. STATE BOARD OF TAX APPEALS AND THE CITY OF JERSEY CITY, DEFENDANTS.

Argued October 4, 1938—Decided February 6, 1939.

Before Justices TRENCHARD and PARKER.

For the prosecutor, *Edward P. Stout.*

For the defendant the city of Jersey City, *James A. Hamill* (*Frank P. McCarthy,* of counsel).

The opinion of the court was delivered by

TRENCHARD, J. A tax assessment was levied for the year 1936 by the assessors of Jersey City on property of the Fairmount Hospital, Inc. (the prosecutor of this writ). The Hudson County Board of Taxation reversed that assessment, and, on appeal, the State Board of Tax Appeals reversed the determination of the county board and reinstated the assessment. We have now a *certiorari* to review the judgment of the state board.

The sole question presented is whether on October 1st, 1935 (the assessing date), the prosecutor was entitled to exemption under section 203, subdivision 4 of the General Tax act as amended by *Pamph. L.* 1931, *ch.* 372; *R. S.* 54:4-3.6, and that depends upon whether the enterprise of the prosecutor "was not conducted for profit."

Of course the burden is on the hospital to show its right to exemption as a hospital not conducted for profit on the date of the assessment. *Dana College* v. *State Board of Tax Appeals,* 14 *N. J. Mis. R.* 308; *affirmed,* 117 *N. J. L.* 530.

Our examination of the fact question as disclosed by the record leads us to think that the hospital has not borne that burden.

This hospital originally started in business as an ordinary stock corporation organized by a group of doctors in 1911 as the Fairmount Surgical Sanatorium, Inc., and was conducted until 1935 as "a profit-making organization." Those doctors subscribed for and paid for shares of stock therein, and we infer from the evidence that the money was used for the purpose of acquiring the necessary land and buildings and equipping the hospital. When so built and equipped it was used admittedly on a strictly commercial basis. It appears that no patient could come there except at the request of one of the doctors who was interested as a stockholder; that when the patient did come there such patient paid as a rule full hospital rates for board, lodging, maintenance, attendance and nursing; that the particular doctor of that patient attended the patient there and in due course presented his bill and expected to be paid. So far it is clear that it was

a strictly commercial enterprise at that time. Of course if there were any earnings in excess of the running expenses the stockholders would be entitled to them, unless they wished to set up a reserve fund of some kind. There is no evidence that there was any mortgage on the property then.

Now in the course of time taxes must have become burdensome and in 1935 the doctors cast about for some way of getting rid of them, so they pursued the course that was taken in the Montclair Academy case (86 *N. J. L.* 497; *affirmed,* 88 *Id.* 374), with one or two slight differences. There was a reorganization under the "Act to incorporate associations not for pecuniary profit" (*Pamph. L.* 1898, *p.* 422), and a conveyance was made of the property of the old corporation to the new corporation. This new corporation made a mortgage equal in amount to the outstanding stock of the old company to a bank as trustee for what are called certificate holders, who are in effect bondholders under a trust mortgage, each individual holding certificates proportionate to his former stock interest. The mortgage required that it should be amortized in eleven years. The interest is paid to the certificate holders and when payments of principal are made, they are made *pro rata* the same as interest.

Now the fact of incorporation under the Non-pecuniary Profit act is not conclusive proof that the corporation is exempt from taxation, but the facts of the case determine the character of the corporation. *Dana College* v. *State Board of Tax Appeals, supra.*

Here, as we have seen, the doctors interested have invested the proceeds of their stock in what are in effect mortgage bonds which, of course, are actionable and on which they draw interest, and interest on the principal when principal is paid. We believe that there is nothing in the record which indicates that any one of these stockholders or, indeed, any other person, contributed any money to the hospital towards endowment or building fund or running expenses connected with the financial obligations of this new corporation. True, there are two free beds, but these again are a personal privilege of interested doctors, and not a privilege available to the general public.

So, looking at what seems to be the substance of the matter, all that we see is a privately run institution, organized and paid for by business contributions of interested physicians, which contributions were originally stock purchases and are now loans enforceable through the medium of a mortgage and secured to the holders of the certificates, with interest; and the necessary funds are obtained, not from charitable contributions, but from the principal fund originally contributed, and the running expenses are met by the board and lodging charges of the patients; in other words, we think it is a private hospital association and nothing else.

Our conclusion is that the corporation in question has failed to show the condition laid down by the Tax act to entitle it to exemption, namely, that it was "not conducted for profit."

The judgment of the state board will be affirmed, with costs.